Shea v Signal Hill Rd. LLC (2022 NY Slip Op 04215)

Shea v Signal Hill Rd. LLC

2022 NY Slip Op 04215

Decided on June 30, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 30, 2022

533971
[*1]James Shea et al., Appellants,
v
Signal Hill Road LLC et al., Respondents.

Calendar Date:May 26, 2022

Before:Garry, P.J., Lynch, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Flink Maswick Law PLLC, Lake Placid (Edward B. Flink of counsel), for appellants.
FitzGerald Morris Baker Firth PC, Glens Falls (Michael Crowe of counsel), for respondents.

Garry, P.J.
Appeals (1) from an order and amended order of the Supreme Court (Bruening, J.), entered January 15, 2021 and February 2, 2021 in Essex County, which partially denied plaintiffs' motion to enforce a restrictive covenant and for contempt and sanctions, and (2) from an order of said court, entered July 12, 2021 in Essex County, which, upon reargument, adhered to its prior decision.
This action, brought by plaintiffs to enforce a restrictive covenant in defendants' chain of title that limits the height of trees, shrubs and bushes on defendants' property to below 15 feet above the natural grade of the property at the point of planting, comes before us for a second time (172 AD3d 1604 [2019], lv dismissed 34 NY3d 1038 [2019]). The parties own adjacent parcels of real property that overlook Lake Placid. Plaintiffs' property is located farther from the lake and uphill from defendants' property. When plaintiffs acquired their property in 1989, they required the sellers to trim the trees, shrubs and bushes on both the parcel being conveyed and all adjoining parcels, thus bringing the properties into compliance with the foregoing restrictive covenant, found in each property's deed, and restoring the view of the lake and mountains from plaintiffs' property. Plaintiffs continued to trim the trees on certain parcels in order to maintain those views, and defendant Frederick E. Brown came to acquire those parcels in 2003.[FN1] At some point in 2013, Brown began to occupy his premises full time, and, from that point forward, Brown repeatedly refused plaintiffs' requests to trim the trees on his property, or allow plaintiffs to do so, ultimately resulting in plaintiffs commencing this litigation in 2016. In 2018, Supreme Court granted plaintiffs' motion for summary judgment, finding that they were entitled to enforce the restrictive covenant and rejecting defendants' arguments in opposition, including certain equitable affirmative defenses. In 2019, this Court affirmed that determination (id. at 1605-1607).
In January 2020, after a period of alleged inaction on the part of defendants, plaintiffs moved for an order to hold defendants in civil contempt and impose sanctions for their failure to comply with the 2018 order and to enforce the restrictive covenant. Defendants opposed, asserting that they had undertaken some steps to bring their property into compliance and that the 2018 order included no deadline by which to do so. In support, defendants submitted invoices reflecting that they had expended approximately $25,000 for tree and hedge trimming, pruning and removal services between June 2019 and February 2020, which appears to have included the removal of more than 50 trees and 70 saplings. In June 2020, Supreme Court, accompanied by the parties and their attorneys, visited the subject properties for the purpose of conducting a settlement conference and observed that plaintiffs' view remained obscured by trees located on defendants' property. Defendants [*2]later submitted a surreply, objected to by plaintiffs, attaching proof that, following the site visit, 24 additional trees on defendants' property had been pruned or removed at an additional expense to defendants of approximately $16,000.
By order entered in January 2021, and amended in February 2021, Supreme Court directed the enforcement of the restrictive covenant but denied plaintiffs' request for a finding of contempt and the imposition of sanctions, agreeing with defendants that its 2018 order did not express a clear and unequivocal mandate to remove offending trees, shrubs and bushes immediately or by any specific deadline. Citing to its powers in equity, the court then set forth a detailed schedule for phased cutting that would "restore[] and maintain[] plaintiff[s'] viewshed, while at the same time retain[ing] some mature trees on the large lot" — as opposed to ordering that every offending tree, shrub and bush on defendants' property be cut to a height of below 15 feet.
Plaintiffs then moved to reargue, asserting that Supreme Court violated the law of the case doctrine by fashioning an equitable remedy after this Court had upheld the rejection of defendants' affirmative defenses and that the court's cutting schedule rendered the unambiguous language of the restrictive covenant meaningless, replacing it with a "customized, complex, and ambiguous process and procedure that requires ongoing court supervision and denies finality to plaintiffs." Plaintiffs also urged the court to reconsider its contempt finding and argued that, at a minimum, a hearing should have been held to assess why defendants had not yet brought their property into full compliance. In a July 2021 order, Supreme Court granted reargument but adhered to its prior decision. Plaintiffs appeal from the January 2021 order, the February 2021 amended order and the July 2021 order.[FN2]
We initially find that Supreme Court acted within its discretion in denying the branch of plaintiffs' motion that sought to hold defendants in civil contempt. Civil contempt requires a showing of, among other things, the disobedience of a lawful judicial order expressing "a clear and unequivocal" mandate (Matter of Justice v Fischer, 126 AD3d 1266, 1266 [2015] [internal quotation marks and citation omitted]; see El-Dehdan v El-Dehdan, 26 NY3d 19, 29 [2015]; Matter of McCormick v Axelrod, 59 NY2d 574, 583 [1983]). Here, the 2018 order held that plaintiffs have the right to enforce the restrictive covenant in defendants' chain of title, but the extent of Supreme Court's directive ends there, reasonably leaving defendants uncertain as to the timing of the required compliance. There was therefore no clear and unequivocal mandate for defendants to have disobeyed (see Matter of Forsyth v City of Rochester, 185 AD3d 1499, 1501 [2020]; Matter of Lipsig [Manus], 139 AD3d 600, 601 [2016]; S.P.Q.R. Co., Inc. v United Rockland Holding Co., Inc., 136 AD3d 610, 612 [2016]; Belkhir v Amrane-Belkhir, 128 [*3]AD3d 1382, 1382 [2015]; Chambers v Old Stone Hill Rd. Assoc., 66 AD3d 944, 946 [2009], appeal dismissed 14 NY3d 747 [2010]). In light of this conclusion, we also reject plaintiffs' claim that a hearing was necessary as to the factual basis of the allegedly contemptible conduct (see Matter of Jean v Washington, 71 AD3d 1145, 1146 [2010]; Moore v Liander, 27 Misc 3d 137[A], *1 [App Term, 2d Dept, 11th & 13th Jud Dists 2010]).[FN3]
Turning to the branch of plaintiffs' motion that sought enforcement of the restrictive covenant, we are not persuaded by plaintiffs' claim that Supreme Court revived defendants' affirmative defenses, in violation of the law of the case, when it exercised its inherent authority to direct an equitable remedy where plaintiffs seek specific performance (see NY Const, art VI, § 7; Judiciary Law § 140-b; CPLR 3017 [a]; State of New York v Barone, 74 NY2d 332, 336 [1989]; Dickerson v Thompson, 88 AD3d 121, 123-124 [2011]; Fanning v Grosfent, 58 AD2d 366, 367 [1977]). Nonetheless, we find that the court's discretionary remedy must be modified.
Supreme Court ordered defendants to, within 120 days of service of its order with notice of entry, cut 50% of all trees and shrubs remaining on their property that had grown to a height of more than 15 feet above the natural grade of the property at the point of planting, acknowledging that crowns of many trees were allowed to grow well above 15 feet and that such trees may therefore need to be removed entirely. Defendants were specifically directed to ensure that, "at a minimum, the view to the lake from plaintiffs' deck is restored and maintained." Prior to the cutting, defendants would be required to serve on plaintiffs and the court an inventory of the species and diameter of all trees on defendants' property above the 15-foot mark with an approximate location on a drawing of the property, identifying which of those trees were planned to be cut. Within 14 days after the cutting, defendants would then serve on plaintiffs and the court a report advising which trees on the inventory were actually cut, and, upon receipt of that report, the court would schedule a conference or site inspection to determine whether "plaintiffs' viewshed has been sufficiently restored." The burden would be on plaintiffs, prior to the conference or site inspection, to advise the court and defendants, in writing, whether they believe their viewshed had been "sufficiently" restored and, if not, to identify the specific trees that continued to obstruct it or any other actions that they believe should be taken.[FN4]
We recognize that, in fashioning the foregoing cutting schedule, Supreme Court thoughtfully endeavored to provide the parties with actionable steps to bring this protracted litigation to an end. However, we agree with plaintiffs that the court's directive improperly suggests that they may be entitled to something less than defendants' full compliance with the plain, unambiguous language of the restrictive [*4]covenant that defendants bound themselves to when they accepted the deeds to their parcels. Notably, in the course of oral argument before this Court, defendants took the position that, per the terms of Supreme Court's order, certain trees on their property above the 15-foot mark may remain. We disagree; they may not. Additionally, we agree with plaintiffs' assertion that the court's directive may function to further extend this litigation in light of the subjective viewshed the court has ordered be restored and the underlying reality that the existing trees, shrubs and bushes on defendants' property will keep growing in the interim. To the extent that the court sought to avoid ordering a clear-cutting of defendants' property, believing that any such measure would itself work an inequity (see generally Van Wagner Adv. Corp. v S & M Enters., 67 NY2d 186, 195 [1986]), for the reasons that follow, we find that any balancing of equities should now favor plaintiffs (see generally Majauskas v Majauskas, 61 NY2d 481, 493-494 [1984]).
It has been at least seven years since plaintiffs first sought defendants' compliance with the unambiguous covenant in their chain of title. It has been over three years since we made it entirely clear that plaintiffs are entitled to enforcement of its terms. It must be emphasized that, even in the face of some arguably changed neighborhood conditions, it was defendants who chose to disrupt plaintiffs' decades-long practice of maintaining the height of the trees, bushes and shrubs on defendants' property. It was defendants who allowed the conditions of the landscape to develop in a manner that has rendered their compliance with the terms of the restrictive covenant so costly and difficult. In sum, although Supreme Court necessarily has some latitude in directing how compliance with the subject covenant will be accomplished, we find that plaintiffs are entitled to nothing short of its prompt, complete enforcement. We therefore remit the matter to Supreme Court to fashion a clear and unequivocal directive to that end to ensure that defendants bring their property into full compliance with the restrictive covenant in their chain of title by the earliest possible date.
In light of our disposition, plaintiffs' remaining contentions are academic. The alternative grounds for affirmance proffered by defendants have been examined and determined to be without merit.
Lynch, Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the appeal from the order entered January 15, 2021 is dismissed, without costs.
ORDERED that the amended order entered February 2, 2021 and the order entered July 12, 2021 are modified, without costs, by reversing so much thereof as directed that the restrictive covenant in defendants' chain of title be enforced by way of the specified cutting schedule; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, [*5]affirmed.

Footnotes

Footnote 1: In 2010, Brown transferred title to defendant Signal Hill Road LLC, an entity he created for estate planning purposes.

Footnote 2: As the February 2021 amended order was entered to correct a typographical error in the January 2021 order and supersedes it, the appeal from the January 2021 order must be dismissed (see DiGiacomo v State of New York, 182 AD3d 977, 978 n 1 [2020]; Matter of Troy Sand & Gravel Co., Inc. v Fleming, 156 AD3d 1295, 1297 n 1 [2017], lv denied 31 NY3d 913 [2018]).
Footnote 3: Plaintiffs make no argument regarding Supreme Court's denial of their request for the imposition of sanctions, and any challenge with respect thereto has therefore been abandoned (see Matter of North Shore Ambulance & Oxygen Serv. Inc. v New York State Emergency Med. Servs. Council, 200 AD3d 1527, 1533 n 5 [2021]; Lyall v Justin Boot Co., 194 AD3d 1237, 1238 n [2021]).

Footnote 4: Supreme Court also encouraged plaintiffs to enter into negotiations with defendants regarding defendants' offer to insert an express viewshed easement into their deed for the benefit of plaintiffs in order to arrive at a mutually beneficial resolution.